STATE of Wisconsin, Plaintiff-Appellant,

v.

John C. THORSTAD, Defendant-Respondent.†

Court of Appeals

*No. 99–1765–CR. Submitted on briefs June 23, 2000.—Decided August 17, 2000.*

**2000 WI App 199**

(Also reported in 618 N.W.2d 240.)

†Petition to review denied.

666

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *James E. Doyle,* attorney general, and *Jennifer E. Nashold,* assistant attorney general.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Ralph A. Kalal* of *Kalal & Associates* of Madison.

Before Dykman, P.J., Roggensack and Deininger, JJ.

¶ 1. DYKMAN, P.J. The State appeals from an order granting John Thorstad's motion to suppress a warrantless blood test performed to obtain evidence of Thorstad's intoxication. The State contends that the blood test was admissible because Thorstad consented to the blood test, or in the alternative, because the blood test was justified under *State v. Bohling,* 173 Wis. 2d 529, 494 N.W.2d 399 (1993). Thorstad argues that the blood test was properly suppressed because it

was coerced and nonconsensual, and therefore, an unreasonable search in violation of the Fourth Amendment. We conclude that the test was admissible because it met the constitutional requirements for warrantless blood tests set out in *Bohling*, 173 Wis. 2d at 533–34. We therefore reverse.

## I. Background

¶ 2. The parties stipulated to facts set forth in both the May 12, 1999 motion hearing and Thorstad's amended motion to suppress. The trial court decision relied on additional facts the parties do not contest. Thorstad was arrested on September 27, 1997, at the scene of a one-car accident.[1] His arrest followed his admission that he was the driver of the car and that he had been drinking a lot. He had also failed two field sobriety tests. Upon arrest, he was taken to Richland Hospital for a blood test. The arresting officer did not obtain a warrant for the blood test. Instead, the officer requested that Thorstad provide a blood sample for evidentiary analysis and read Thorstad an "Informing the Accused" form. The information on this form approximated the language mandated by WIS. STAT. § 343.305(4) (1997–98).[2] Among other things, the form

---

[1] The trial court's decision gives the date of arrest as September 27, while Thorstad's amended motion to suppress gives the date as September 28. The discrepancy is not relevant to our decision.

[2] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted. The language of WIS. STAT. § 343.305(4) has been modified since Thorstad's arrest. However, the substance of the information that § 343.305(4) requires in the Informing the Accused form has not changed. Furthermore, the language change in the statute since Thorstad's arrest does not affect our analysis.

explained that Thorstad could refuse to submit to chemical testing, but that upon such refusal, his driving privileges would be revoked. After the officer read the form, Thorstad agreed to the blood test. At no time did Thorstad request that he be given the opportunity for an alternate form of test, nor did he ever refuse to take the blood test.

¶ 3. On October 20, 1997, the State filed a complaint against Thorstad, alleging one count each of operation of a motor vehicle while under the influence of an intoxicant and operation of a motor vehicle with a prohibited alcohol concentration in violation of WIS. STAT. § 346.63(1)(a) and (b).[3] Thorstad moved to suppress blood test evidence of his intoxication, and later amended his motion. In his amended motion, Thorstad argued that the blood test was an unreasonable search in violation of the Fourth Amendment. The trial court concluded that the State had failed to meet its burden to justify the warrantless blood test and ordered the blood test suppressed. The State appeals.

## II. Analysis

¶ 4. Whether a search is reasonable is a question of constitutional law that we review de novo. *See State v. Guzman,* 166 Wis. 2d 577, 586, 480 N.W.2d 446 (1992). The use of warrantless blood tests to detect evidence of intoxication in motorists suspected of drunk-driving related offenses has been held to be constitutionally permissible at least since the United States Supreme Court's decision in *Breithaupt v. Abram,* 352 U.S. 432 (1957). In *Breithaupt,* the Court

---

[3] The state filed an amended complaint on May 4, 1998. However, no additional counts were alleged.

affirmed a defendant's conviction over his objection that blood test evidence taken from him while unconscious was an unreasonable search and seizure under the Fourth Amendment. *Id.* at 434, 440.

¶ 5. Recognizing that "intrusions beyond the body's surface" implicated "interests in human dignity and privacy which the Fourth Amendment protects," the Supreme Court elaborated on the conditions under which blood tests were constitutionally permissible. *Schmerber v. California*, 384 U.S. 757, 769–70 (1966). In *Schmerber*, the Court held that the Fourth Amendment permitted a warrantless blood test after a lawful arrest. *Id.* at 759, 771. However, the Court qualified its holding by noting several conditions and circumstances underlying its conclusion. *See id.* at 770–72. First, given the facts of the case, there was a "clear indication" that evidence of intoxication would be found in the defendant's blood. *Id.* at 770. Second, the blood test was taken in a "reasonable manner" because it was taken "by a physician in a hospital environment according to accepted medical practices." *Id.* at 771. Third, because the human body rapidly eliminates alcohol from the system, "the delay necessary to obtain a warrant, under the circumstances, threatened the destruction of evidence." *Id.* at 770 (citation omitted). Finally, the Court noted that the defendant was not someone with a particular health or religious objection. *See id.* at 771. Therefore, a blood test was a reasonable means to measure intoxication: "[F]or most people the procedure involves virtually no risk, trauma, or pain." *Id.*

¶ 6. Relying on *Schmerber*, in *Bohling*, the Wisconsin Supreme Court held that given certain limitations, "a warrantless blood sample taken at the

direction of a law enforcement officer is permissible."
*Bohling*, 173 Wis. 2d at 533, 536. The *Bohling* court
specifically noted that it read *Schmerber* to permit war-
rantless blood tests because the rapid dissipation of
alcohol from the bloodstream constitutes exigent cir-
cumstances. *Id.* at 539–40. The presence of exigent
circumstances is an exception to the Fourth Amend-
ment's requirement that law enforcement authorities
obtain a warrant to conduct a search. *See New York v.
Quarles*, 467 U.S. 649, 653 n.3 (1984); *State v.
Kiekhefer*, 212 Wis. 2d 460, 475, 569 N.W.2d 316 (Ct.
App. 1997).

¶ 7. In outlining the requirements that must be
met before a warrantless blood draw is permissible
under the Fourth Amendment, the *Bohling* court
examined the analysis in *Schmerber*. *Bohling*, 173 Wis.
2d at 537–41. The court concluded that warrantless
blood draws are permissible when the following four
requirements are met:

> (1) the blood draw is taken to obtain evidence of
> intoxication from a person lawfully arrested for a
> drunk-driving related violation or crime, (2) there is
> a clear indication that the blood draw will produce
> evidence of intoxication, (3) the method used to take
> the blood sample is a reasonable one and performed
> in a reasonable manner, and (4) the arrestee
> presents no reasonable objection to the blood draw.

*Id.* at 533–34 (footnote omitted).[4]

¶ 8. The State argues that taking Thorstad's
blood without a warrant was justified because the four

_____

[4] The court also noted that probable cause to arrest could
substitute for an actual lawful arrest in requirement (1). *See
Bohling*, 173 Wis. 2d at 534 n.1 (citing *State v. Bentley*, 92 Wis.
2d 860, 863–64, 286 N.W.2d 153 (Ct. App. 1979)).

requirements of *Bohling* were met. The State also contends that, regardless of *Bohling*, Thorstad consented to the blood test under WIS. STAT. § 343.305. In *County of Ozaukee v. Quelle*, 198 Wis. 2d 269, 277–78, 542 N.W.2d 196 (Ct. App. 1995), we summarized § 343.305:

> Every driver in Wisconsin impliedly consents to take a chemical test for blood alcohol content. A person may revoke consent, however, by simply refusing to take the test. Thus, a driver has a "right" not to take the chemical test (although there are certain risks and consequences inherent in this choice). The legislature recognized that drivers being asked to take a chemical test should be informed of this choice and therefore requires law enforcement officers to provide drivers with certain information.

(Citations omitted.)

¶ 9. Thorstad does not contend that the law enforcement officer failed to provide the information mandated by WIS. STAT. § 343.305; nevertheless, he argues that the blood test was an unreasonable search under the Fourth Amendment. In support of his position, Thorstad relies heavily on a Ninth Circuit Court of Appeals case, *Nelson v. City of Irvine*, 143 F.3d 1196 (9th Cir. 1998), *cert. denied*, 525 U.S. 981 (1998). In *Nelson*, the Ninth Circuit held that "[w]hen an arrestee requests but is denied the choice of an available breath or urine test, the exigency used to justify the warrantless blood test continues only because of the . . . failure to perform the requested alternative test." *Id.* at 1205. Therefore, "blood tests [become] not only unnecessary and unreasonable, but violate[ ] the Fourth Amendment's warrant requirement." *Id.* However, *Nelson* was a class action where the Ninth Circuit limited the plaintiff class to those who had requested or consented

to a breath or urine test instead of a blood test. *Id.* at 1203 & n.3. Thorstad did not request either alternate test. Furthermore, *Nelson* is not binding in Wisconsin. To the extent, if any, that *Nelson* is in conflict with the exigent circumstances analysis of *Bohling* and *Schmerber*, it is not for this court to resolve that conflict. *See Cook v. Cook,* 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997).

¶ 10. Thorstad also argues that the blood test was an unreasonable search because it was involuntary and nonconsensual. However, *Bohling* does not require that the subject of the blood test give consent or voluntarily take the test, 173 Wis. 2d at 534–35, nor does *Bohling* thus depend on whether the subject of the blood test was deemed to have consented under WIS. STAT. § 343.305. Therefore, Thorstad's contention that his blood test was an unreasonable search must ultimately rest on one of the following premises: (1) the requirements of *Bohling* were not met; (2) § 343.305 is unconstitutional; or, (3) *Bohling* is unconstitutional.[5]

¶ 11. Even if it were clear from Thorstad's brief that he is arguing that *Bohling* is unconstitutional, we could not reach that question. This court cannot alter or overrule the constitutional standard set by *Bohling*. "The supreme court is the only state court with the power to overrule, modify or withdraw language from a previous supreme court case." *Cook,* 208 Wis. 2d at 189. Neither do we begin our analysis by addressing the constitutionality of WIS. STAT. § 343.305. "As a matter

---

[5] Thorstad has served the attorney general with a copy of his amended motion to suppress. We have previously concluded that notice to the attorney general is a prerequisite to a party's constitutional challenge to a statute. *See Midwest Mut. Ins. Co. v. Nicolazzi,* 138 Wis. 2d 192, 202, 405 N.W.2d 732 (Ct. App. 1987).

of judicial prudence, a court should not decide the constitutionality of a statute unless it is essential to the determination of the case before it." *Maguire v. Journal Sentinel, Inc.*, 2000 WI App 4, ¶ 31, 232 Wis. 2d 236, 605 N.W.2d 881 (quoting *Kollasch v. Adamany*, 104 Wis. 2d 552, 561, 313 N.W.2d 47 (1981)), *review denied*, 2000 WI 36, 234 Wis. 2d 176, 612 N.W.2d 732. Instead, our first task is to determine whether the requirements of *Bohling* were met under the circumstances of this case. If the *Bohling* requirements were met, our inquiry need go no further.

¶ 12. To justify a warrantless blood draw, *Bohling* first requires that "the blood draw is taken to obtain evidence of intoxication from a person lawfully arrested for a drunk-driving related violation or crime." 173 Wis. 2d at 534. When Thorstad's blood was taken, he had already been arrested. Thorstad does not claim that his blood was taken or used for any purpose other than to obtain evidence of intoxication. Therefore, the first requirement is met.

¶ 13. *Bohling* next requires that there be "a clear indication that the blood draw will produce evidence of intoxication." *Id.* The supreme court has held that, in the context of a blood draw incident to arrest, "clear indication" is the legal equivalent of "reasonable suspicion." *State v. Seibel*, 163 Wis. 2d 164, 179, 471 N.W.2d 226 (1991). Reasonable suspicion is "less than probable cause, but more than a hunch." *State v. Guy*, 172 Wis. 2d 86, 95, 492 N.W.2d 311 (1992) (citing *Terry v. Ohio*, 392 U.S. 1, 22 (1968)). The question of what constitutes reasonable suspicion is a common sense test, where the court considers all the facts and circumstances. *See State v. Jackson*, 147 Wis. 2d 824, 834, 434 N.W.2d 386 (1989).

¶ 14. At the time Thorstad's blood was drawn, he had been found at the scene of a one-car accident. He had admitted he had been driving and had been drinking a lot. He had also failed two field sobriety tests. The combination of these circumstances constitutes at least a reasonable suspicion that a blood test would reveal evidence of intoxication.

¶ 15. *Bohling* also requires that when a blood sample is taken, "the method used to take the blood sample is a reasonable one and performed in a reasonable manner." 173 Wis. 2d at 534. In both *Bohling* and *Schmerber*, the defendant was taken to a hospital for the blood test. *Schmerber*, 384 U.S. at 758–59; *Bohling*, 173 Wis. 2d at 535. Both the *Bohling* court and the *Schmerber* Court concluded that the blood test was reasonable under the Fourth Amendment. *Schmerber*, 384 U.S. at 772; *Bohling*, 173 Wis. 2d at 536. Like the defendants in *Schmerber* and *Bohling*, Thorstad's blood test was performed in a medical environment and was therefore done by a reasonable method and in a reasonable manner.

¶ 16. Finally, *Bohling* requires that "the arrestee presents no reasonable objection to the blood draw." 173 Wis. 2d at 534. We need not delineate what sorts of objections might be considered reasonable objections because Thorstad did not present *any* objections, reasonable or otherwise. He did not refuse to take the test, nor does the record reveal that he gave any indication that he would prefer another test.

■

¶ 17. Because the requirements of *Bohling* were satisfied, we conclude that Thorstad's blood test was a reasonable search under the Fourth Amendment. Because the search was constitutionally permissible, the trial court erred in granting Thorstad's amended

motion to suppress. We therefore reverse and remand for further proceedings.

*By the Court.*—Order reversed and cause remanded with directions.