STATE of Wisconsin, Plaintiff-Respondent,

v.

Paul J. VANLAARHOVEN, Defendant-Appellant.

Court of Appeals

*No. 01–0222–CR. Submitted on briefs July 19, 2001.—Decided October 10, 2001.*

2001 WI App 275

(Also reported in 637 N.W.2d 411.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Michele A. Tjader* of *Kalal & Associates*, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Bradley J. Priebe*, assistant district attorney of Oshkosh.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Jennifer Nashold*, assistant attorney general, and *James E. Doyle*, attorney general.

Before Nettesheim, P.J., Anderson and Snyder, JJ.

¶ 1. ANDERSON, J.[1]    Paul J. VanLaarhoven appeals from a judgment of conviction for operating a motor vehicle while intoxicated, third offense, in violation of WIS. STAT. §§ 346.63(1)(a) and 346.65(2)(c). VanLaarhoven challenges the denial of his motion to suppress the results of a chemical test of his blood. Specifically, VanLaarhoven contends that the police were required to obtain a search warrant before submitting his blood sample for testing. We reject his argument and affirm the judgment of conviction.

---

[1] This appeal was originally assigned to a one-judge panel under WIS. STAT. § 752.31(2)(c) (1999–2000). Because the issue presented was determined to be one of statewide importance and had only been previously addressed in unpublished opinions, the chief judge issued an order under § 752.31(3) that a three-judge panel decide this appeal. All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

883

¶ 2. The facts are not in dispute. VanLaarhoven was arrested for operating a motor vehicle while intoxicated. He was advised under the Implied Consent Law and consented to submit to a chemical test of his blood. A blood sample was drawn from VanLaarhoven only after he provided two insufficient breath samples. Some days later, the sample was submitted to the Wisconsin State Hygiene Laboratory for analysis. The results established a blood alcohol concentration of 0.173%.

¶ 3. VanLaarhoven filed a series of motions. Included in the blizzard of motions was a motion to suppress on the grounds that regardless of whether the initial seizure of the blood sample without a warrant was lawful, the subsequent analysis of the blood sample required a warrant because there were neither exceptions to the warrant requirement nor exigent circumstances that justified the warrantless analysis of his blood. The trial court rejected VanLaarhoven's argument that the police could not conduct a search of his blood sample without first obtaining a warrant. VanLaarhoven then pled no contest, and he appeals from the judgment of conviction.

¶ 4. VanLaarhoven suggests that his blood sample, once obtained, cannot be analyzed for evidentiary purposes without obtaining a second search warrant. Whether a search warrant is required before a blood draw was recently addressed in *State v. Thorstad*, 2000 WI App 199, 238 Wis. 2d 666, 618 N.W.2d 240, *review denied*, 2000 WI 121, 239 Wis. 2d 310, 619 N.W.2d 93 (Wis. Oct 17, 2000) (No. 99–1765–CR), *cert. denied, Thorstad v. Wisconsin*, 121 S. Ct. 1099 (U.S. Wis. Feb. 20, 2001) (No. 00–1145). There, citing to *Schmerber v. California*, 384 U.S. 757, 769–70 (1966), we acknowledged that the seizure of an Implied Consent Law blood sample falls under the "exigent circum-

stances" exception to the warrant requirement. *Thorstad*, 2000 WI App 199 at ¶ 5 ("[B]ecause the human body rapidly eliminates alcohol from the system, 'the delay necessary to obtain a warrant, under the circumstances, threatened the destruction of evidence.' "). However, VanLaarhoven contends that the exigency is over once the blood sample is obtained and the authority of the police to act further, without a judicially issued warrant, is terminated.

¶ 5. The issue VanLaarhoven presents on appeal requires the application of the constitutional principles of search and seizure. The application of constitutional principles to the undisputed facts is a question of law that we decide without deference to the circuit court's decision. *State v. Foust*, 214 Wis. 2d 568, 571–72, 570 N.W.2d 905 (Ct. App. 1997). Despite our de novo standard of review, we nonetheless value the trial court's decision on the issues. *Scheunemann v. City of West Bend*, 179 Wis. 2d 469, 475, 507 N.W.2d 163 (Ct. App. 1993).

¶ 6. Before addressing VanLaarhoven's arguments, it is necessary to briefly review search and seizure principles and Wisconsin's Implied Consent Law. Both the Fourth Amendment to the United States Constitution and article I, section 11 of the Wisconsin Constitution forbid unreasonable searches and seizures. *State v. Boggess*, 115 Wis. 2d 443, 448, 340 N.W.2d 516 (1983). Warrantless searches are deemed unreasonable per se, subject to a few carefully delineated exceptions that are "jealously and carefully drawn." *Id.* at 449. Included in the exceptions to the warrant requirement is consent to search. *State v. Callaway*, 106 Wis. 2d 503, 510, 317 N.W.2d 428 (1982).

885

¶ 7. It is well accepted, from the statute and the case law, that under Wisconsin's Implied Consent Law, the consent given by all individuals who apply for a driver's license is the consent to provide a sample and the consent to the chemical analysis of the sample. WISCONSIN STAT. § 343.305(2) codifies the Implied Consent Law:

> Any person who . . . drives or operates a motor vehicle upon the public highways of this state . . . is deemed to have *given consent* to one or more *tests* of his or her breath, blood or urine, *for the purpose of determining the presence or quantity in his or her blood or breath, of alcohol* . . . when requested to do so by a law enforcement officer . . . or when required to do so. . . . Any such *tests* shall be administered upon the request of a law enforcement officer. The law enforcement agency by which the officer is employed shall be prepared to administer, either at its agency or any other agency or facility, 2 of the 3 *tests* . . . and may designate which of the *tests* shall be administered first. (Emphasis added.)

In *State v. Neitzel*, 95 Wis. 2d 191, 201, 289 N.W.2d 828 (1980), the Wisconsin Supreme Court explained the Implied Consent Law:

> [T]he accused intoxicated driver has no choice in respect to granting his consent. He has, by his application for a license, waived whatever right he may otherwise have had to refuse to submit to chemical testing. It is assumed that, *at the time a driver made application for his license,* he was fully cognizant of his rights and was deemed to know that, in the event he was later arrested for drunken driving, *he had consented,* by his operator's application, *to chemical testing* under the circumstances envisaged by the statute. (Emphasis added.)[2]

---

[2] There is no doubt that the *test* referred to in the statute and case law is the chemical analysis of a sample of breath,

¶ 8. In addition to VanLaarhoven's implied consent to a chemical analysis of his breath, blood or urine, he was given the information in the Informing the Accused form twice—once before a breath sample was attempted and again before the blood sample was taken.[3] Both times, after having been read the Informing the Accused form, VanLaarhoven voluntarily submitted to the testing procedure. In *County of Ozaukee v. Quelle*, 198 Wis. 2d 269, 277, 542 N.W.2d 196 (Ct. App. 1995), we wrote, "[e]very driver in Wisconsin impliedly consents to take a chemical test for blood alcohol content. Section 343.305(2), STATS. A person may revoke consent, however, by simply refusing to take the test." We conclude that by operation of law and by submitting to the tests, VanLaarhoven consented to a taking of a sample of his blood and the chemical analysis of that sample.

¶ 9. VanLaarhoven relies on three United States Supreme Court cases to support his argument that the testing of blood is a separate search necessitating a warrant. Those cases do not support his contention. In

blood or urine provided by the alleged intoxicated driver. In *City of Madison v. Bardwell*, 83 Wis. 2d 891, 900, 266 N.W.2d 618 (1978), the Wisconsin Supreme Court addressed the reliability of chemical tests and held that the method of measurement of blood alcohol by any test specified by statute is presumed reliable.

[3] The content of the Informing the Accused form is mandated by WIS. STAT. § 343.305(4), and informs the driver that he or she has been arrested for drunk driving; that law enforcement wants to take a sample of his or her breath, blood or urine to determine the alcohol concentration in the driver's system; that refusal to submit to the test will result in negative consequences; and, the driver may take additional tests after completing the first test.

*Walter v. United States*, 447 U.S. 649, 651–52 (1980), a third party received illegal pornographic tapes from the defendant and turned them over to the FBI. FBI agents then viewed the tapes without a warrant. *Id.* at 652. The Court held that this warrantless search in the absence of exigent circumstances and without prior consent was illegal. *Id.* at 654, 659. VanLaarhoven's situation differs from *Walter* in that VanLaarhoven consented to the search and seizure of his blood. In *Walter*, the defendant consented to nothing. It is not surprising, therefore, that the Supreme Court required a warrant before the FBI could view the films given to them by a person not employed by the government.

¶ 10. VanLaarhoven also relies upon *United States v. Jacobsen*, 466 U.S. 109 (1984), for the proposition that police may not search without a warrant merely because they were entitled to seize without a warrant. In *Jacobsen*, the Court stated that even when a package is lawfully seized to prevent destruction or loss of suspected contraband, the Fourth Amendment requires government agents to obtain a warrant before examining the contents. *Id.* at 114. *Jacobsen* does not hold that consent is not an exception to the Fourth Amendment warrant requirement. VanLaarhoven consented to the extraction and testing of his blood.

¶ 11. Finally, in *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 632–33 (1989), the Court concluded that certain federal regulations requiring that railroad employees involved in railroad accidents provide blood and urine samples did not violate the Fourth Amendment to the United States Constitution. VanLaarhoven does not rely upon this opinion to support his assertion that analysis of the blood sample requires a separate warrant. Rather, he relies upon *Skinner* to support a policy argument that "the Fourth

Amendment's protection of the 'reasonable expectation of privacy' most certainly is involved in the government's analysis of the seized sample." And, as we explained in our discussion of *Walter*, VanLaarhoven has consented to both the extraction of his blood and its subsequent testing and has waived any privacy interest in the blood sample.

¶ 12. We conclude that *United States v. Snyder*, 852 F.2d 471 (9th Cir. 1988), and *State v. Petrone*, 161 Wis. 2d 530, 468 N.W.2d 676 (1991), are more on point. In *Snyder*, the defendant was arrested for operating while intoxicated and a blood sample was taken without the defendant's consent. *Id.* at 472. Two days later, the sample was submitted for analysis without a warrant. *Id.* The defendant brought a motion to suppress, claiming that the warrantless analysis of the blood sample was an unreasonable search. The trial court denied the motion. *Id.*

¶ 13. Relying largely on *Schmerber*, the *Snyder* court upheld the trial court's ruling. The court said:

> The flaw in Snyder's argument is his attempt to divide his arrest, and the subsequent extraction and testing of his blood, into too many separate incidents, each to be given independent significance for fourth amendment purposes. . . . It seems clear, however, that *Schmerber* viewed the seizure and separate search of the blood as a single event for fourth amendment purposes. . . .
>
> The [*Schmerber*] Court therefore necessarily viewed the right to seize the blood as encompassing the right to conduct a blood-alcohol test at some later time.

*Snyder*, 852 F.2d at 473–74.[4]

---

[4] In his reply brief, VanLaarhoven argues that *Walter v. United States*, 447 U.S. 649 (1980), and *United States v. Snyder*,

¶ 14. In *Petrone*, the police obtained a search warrant directing them to seize "photo album(s) containing nude photographs of female juvenile(s) together with developed photographs and 35 mm negatives of same." *Petrone*, 161 Wis. 2d at 538 n.2. In addition, they were authorized to seize "all . . . film . . . used in the taking . . . of photographic pictures. . . ." *Id.* at 538. The police seized several rolls of undeveloped film and had to develop the film before deciding if it included pornographic photographs. *Id.* The defendant sought to suppress the photos the police developed from the film seized, arguing that "the process of developing the films was beyond the authority of the warrant." *Id.* at 540.

¶ 15. The Wisconsin Supreme Court rejected Petrone's argument. The court held that "[b]ecause the undeveloped film was lawfully seized pursuant to the warrant, the deputies were justified in developing and viewing the film." *Id.* at 545. In reaching this conclusion, the court reasoned:

> Developing the film is simply a method of examining a lawfully seized object. *Law enforcement officers may employ various methods to examine objects lawfully seized in the execution of a warrant.* For example, blood stains or substances gathered in a lawful search

852 F.2d 471 (9th Cir. 1988), cannot be reconciled. In *Walter*, law enforcement came into possession of the pornographic film through the actions of a private party, *Walter*, 447 U.S. at 651–52, while in *Snyder*, law enforcement came into possession of the blood sample by operation of California's Implied Consent Law, *Snyder*, 852 F.2d at 472. Contrary to VanLaarhoven's impassioned argument that if we reconcile *Walter* and *Snyder* as we have, it would be a declaration of war against the Constitution. Our reconciliation of these two cases recognizes that the warrant requirement permits law enforcement to examine evidence seized either with a warrant or under one of the exceptions to the warrant requirement.

may be subjected to laboratory analysis. The defendant surely could not have objected had the deputies used a magnifying glass to examine lawfully seized documents or had enlarged a lawfully seized photograph in order to examine the photograph in greater detail. Developing the film made the information on the film accessible, just as laboratory tests expose what is already present in a substance but not visible with the naked eye. Developing the film did not constitute, as the defendant asserts, a separate, subsequent unauthorized search having an intrusive impact on the defendant's rights wholly independent of the execution of the search warrant. The deputies simply used technological aids to assist them in determining whether items within the scope of the warrant were in fact evidence of the crime alleged.

*Id.* (emphasis added; citation omitted).

¶ 16. *Petrone* and *Snyder* teach that the examination of evidence seized pursuant to the warrant requirement or an exception to the warrant requirement is an essential part of the seizure and does not require a judicially authorized warrant. Both decisions refuse to permit a defendant to parse the lawful seizure of a blood sample into multiple components, each to be given independent significance for purposes of the warrant requirement.

### Conclusion

¶ 17. VanLaarhoven concedes that under *Thorstad*, 2000 WI App 199 at ¶ 17, his blood sample was lawfully taken. VanLaarhoven is wrong in his argument that the chemical analysis of his blood sample is a separate event for warrant requirement purposes. In this case, law enforcement was permitted

to conduct an analysis of VanLaarhoven's blood to determine if it contained evidence of a blood alcohol concentration in excess of the legal limit.

*By the Court.*—Judgment affirmed.