COURT OF APPEALS
DECISION
DATED AND FILED

July 1, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2021AP36-CR**

**STATE OF WISCONSIN**

Cir. Ct. No.  **2018CT21**

**IN COURT OF APPEALS
DISTRICT IV**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

CHARLES L. NEEVEL,

   DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Dodge County: BRIAN A. PFITZINGER, Judge. *Affirmed and cause remanded for further proceedings.*

¶1      FITZPATRICK, P.J.[1]  Charles Neevel was arrested on suspicion of operating a motor vehicle while intoxicated.  The arresting officer read to Neevel

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(c) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

the "Informing the Accused" form, as required by Wisconsin's implied consent statute, WIS. STAT. § 343.305,[2] and Neevel verbally consented to a blood draw. Based on the results of the blood draw, Neevel was charged with operating a vehicle while intoxicated in the Dodge County Circuit Court. Neevel pleaded not guilty and moved to suppress the results of the blood draw on the basis that the blood draw violated his Fourth Amendment rights. Specifically, Neevel argued that the blood draw was an unreasonable search because the arresting officer did not offer to Neevel a less intrusive form of chemical testing. The circuit court denied Neevel's suppression motion. Neevel was convicted based on his no contest plea and appeals the court's denial of his suppression motion.

¶2      For the reasons that follow, I affirm the circuit court's judgment of conviction and denial of Neevel's suppression motion.

## BACKGROUND

¶3      There is no dispute as to the following facts.

¶4      Charles Neevel was driving his vehicle in the Town of Oak Grove in Dodge County. Lieutenant Enright of the Dodge County Sheriff's Office stopped Neevel's vehicle after observing the vehicle tow a trailer that strayed in and out of the designated lane of travel. Enright made contact with Neevel and observed that: Neevel smelled of intoxicants; his eyes were glassy; Neevel had slightly slurred speech; he had a hard time answering questions; and he admitted to having

---

[2] As have prior courts, I sometimes refer to WIS. STAT. § 343.305 as the "implied consent" statute, even though only § 343.305(2) is specifically titled "Implied Consent." *See, e.g.*, **State v. Prado**, 2021 WI 64, ¶1 n.1, __ Wis. 2d __, __ N.W.2d __. Section 343.305(4) requires officers to read the Informing the Accused form.

two drinks. At some point, Officer Olbinski arrived at the scene. After conducting field sobriety tests, the officers decided to administer a preliminary breath test to Neevel. The breath test indicated that Neevel had a blood alcohol concentration of .143.

¶5 Neevel was then arrested and placed in Officer Olbinski's squad car. Olbinski read to Neevel the Informing the Accused form as required by WIS. STAT. § 343.305(4).[3] After Olbinski finished reading the form, Neevel verbally consented to a blood draw. Neevel was not offered, nor did he request, an option to submit to an alternative test, such as a breath test. Neevel was transported to a hospital where his blood was drawn.

¶6 Neevel was charged with operating a vehicle under the influence of an intoxicant contrary to WIS. STAT. § 346.63(1)(a) and with operating a vehicle with a prohibited alcohol concentration contrary to § 346.63(1)(b). He moved to suppress the results of the blood test on the grounds that the test was an

---

[3] The statutory "Informing the Accused" form provides, in relevant part:

> You have either been arrested for an offense that involves driving or operating a motor vehicle while under the influence of alcohol or drugs, or both. …
>
> This law enforcement agency now wants to test one or more samples of your breath, blood or urine to determine the concentration of alcohol or drugs in your system….
>
> If you take all the requested tests, you may choose to take further tests. You may take the alternative test that this law enforcement agency provides free of charge. You also may have a test conducted by a qualified person of your choice at your expense. You, however, will have to make your own arrangements for that test.

WIS. STAT. § 343.305(4).

unreasonable search under the Fourth Amendment. Specifically, he argued that the search was unreasonable because he was not offered a less intrusive form of testing than a blood draw. The circuit court denied his motion to suppress, and Neevel pleaded no contest to operating a vehicle under the influence of an intoxicant. The prohibited alcohol concentration charge was dismissed. The circuit court stayed imposition of Neevel's sentence for 60 days during the pendency of this appeal.

## DISCUSSION

¶7      Neevel contends on appeal that, under the Fourth Amendment, this court has the "inherent authority" to impose upon law enforcement in this state a requirement that law enforcement must offer to persons arrested for operating a vehicle while intoxicated a means of chemical testing that is less intrusive than a blood draw. Neevel also argues that, because Officer Olbinski did not do so, the Fourth Amendment was violated and the results of the blood draw must be suppressed. In response, the State argues:  (1) The implied consent statute is constitutional and authorized Officer Olbinski to have a blood draw administered to Neevel; (2) Neevel consented to the blood draw and, as a result, Neevel does not have "standing" to request suppression of the evidence; and (3) even if the search was unreasonable, the results must not be suppressed under the good faith exception to the exclusionary rule. I begin by setting forth the principles governing warrantless blood draws and the standard of review.

## I.  Governing Principles and Standard of Review.

¶8      The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *State v. Brar*, 2017 WI 73, ¶15, 376

Wis. 2d 685, 898 N.W.2d 499 (quoting *State v. Tullberg*, 2014 WI 134, ¶29, 359 Wis. 2d 421, 857 N.W.2d 120). "The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable." *Id.* (quoting *Florida v. Jimeno*, 500 U.S. 248, 251 (1991)).

¶9 "A warrantless search is presumptively unreasonable." *Tullberg*, 359 Wis. 2d 421, ¶30. However, "there are certain specifically established and well-delineated exceptions to the Fourth Amendment's warrant requirement." *State v. Williams*, 2002 WI 94, ¶18, 255 Wis. 2d 1, 646 N.W.2d 834 (internal citations omitted). One well-established exception to the warrant requirement is a search conducted pursuant to consent. *State v. Phillips*, 218 Wis. 2d 180, 196, 577 N.W.2d 794 (1998); *see also* *Brar*, 376 Wis. 2d 685, ¶16 ("[I]t is no doubt reasonable for the police to conduct a search once they have been permitted to do so.") (quoting *Jimeno*, 500 U.S. at 250-51). Consent may be given in the form of "words, gesture, or conduct." *Phillips*, 218 Wis. 2d at 197.

¶10 Under Wisconsin's implied consent statute, a driver on Wisconsin roads is "deemed to have given consent to one or more tests of his or her breath, blood or urine" when requested by a law enforcement officer. WIS. STAT. § 343.305(2).[4] However, our supreme court has recognized that "deemed" consent

---

[4] WISCONSIN STAT. § 343.305(2) provides, in relevant part:

> Any person who … drives or operates a motor vehicle upon the public highways of this state … is deemed to have given consent to one or more tests of his or her breath, blood or urine, for the purpose of determining the presence or quantity in his or her blood or breath, of alcohol, controlled substances, controlled substance analogs or other drugs, or any combination of alcohol, controlled substances, controlled substance analogs and other drugs, when requested to do so by a law enforcement officer under sub. (3)(a) or (am) or when required to do so under sub. (3)(ar) or (b). Any such tests shall be administered upon the

(continued)

5

is constitutionally distinct from "actual" consent. ***State v. Prado***, 2021 WI 64, ¶¶46-48, __ Wis. 2d __, __ N.W.2d __. To create constitutionally sufficient consent, drivers must give "actual" consent to a blood draw; "deemed" consent alone is not sufficient. ***Id.***, ¶23 (citing ***State v. Padley***, 2014 WI App 65, ¶39, 354 Wis. 2d 545, 849 N.W.2d 867).

¶11 In briefing in this court, Neevel states explicitly that he does not contend that WIS. STAT. § 343.305(2) of the implied consent statute is unconstitutional. Nevertheless, he maintains that the blood draw was an unreasonable search.

¶12 When determining whether the facts found by the circuit court satisfy the reasonableness requirements for searches under the Fourth Amendment, this court applies a two-step standard of review. ***Phillips***, 218 Wis. 2d at 190-91. First, this court will not upset the circuit court's findings of evidentiary or historical facts unless those are "contrary to the great weight and clear preponderance of the evidence." ***Id.*** Second, this court independently determines constitutional questions. ***Id.***

¶13 I now address the State's arguments and begin with its contention that the search was authorized by the implied consent statute.

---

request of a law enforcement officer. The law enforcement agency by which the officer is employed shall be prepared to administer, either at its agency or any other agency or facility, 2 of the 3 tests under sub. (3)(a), (am), or (ar), and may designate which of the tests shall be administered first.

## II. The Implied Consent Statute Authorized Neevel's Blood Draw.

¶14    Neevel argues that his blood draw was unreasonable because the officer did not offer a less intrusive test before the officer chose the blood draw. He contends that the supreme court's decision in *Birchfield v. North Dakota*, 136 S. Ct. 2160 (2016), should be interpreted as requiring law enforcement officers to offer less intrusive tests before administration of a blood draw. The State argues that *Birchfield* did not create the constitutional rule that Neevel claims. For the following reasons, I agree with the State and begin by discussing the applicable statutory subpart.

¶15    It is undisputed that WIS. STAT. § 343.305(2) explicitly authorized Neevel's blood draw. This subpart allows law enforcement officers to request that a person arrested for OWI provide one or more samples of the person's blood, breath, or urine for testing. *State v. Krajewski*, 2002 WI 97, ¶20, 255 Wis. 2d 98, 648 N.W.2d 385. Important to the analysis in this appeal, § 343.305(2) permits law enforcement to designate which of the tests shall be administered first. *Krajewski*, 255 Wis. 2d 98, ¶55; § 343.305(2) ("The law enforcement agency by which the officer is employed shall be prepared to administer, either at its agency or any other agency or facility, 2 of the 3 tests under sub. (3)(a), (am), or (ar), and may designate which of the tests shall be administered first.").

¶16    In this case, Officer Olbinski's choice to administer a blood draw before any less intrusive tests was explicitly authorized by the implied consent statute. *See* WIS. STAT. § 343.305(2). The only coherent analysis that would allow me to suppress the results of the blood draw would be to hold that the provisions of § 343.305(2) violate the Fourth Amendment. However, Neevel does not challenge the constitutionality of any part of the implied consent statute.

Therefore, I conclude that Officer Olbinski's choice to have a blood draw administered was authorized by § 343.305(2) and was constitutional.[5]

¶17    Moreover, **Birchfield** did not announce the Fourth Amendment rule that Neevel claims. In that case, the supreme court addressed the constitutionality of blood draws conducted pursuant to the warrant exception for searches incident to arrest. **Birchfield**, 136 S. Ct. at 2185. The Court distinguished between the invasiveness of blood draws and breath tests and held that the more-invasive blood draws could not be administered as a search incident to an arrest for drunk driving. **Id.** The Court also addressed implied consent laws, holding that it is constitutional for such laws to impose civil penalties and evidentiary consequences for a driver's refusal to consent to a blood draw. **Id.** However, the Court held that a state could not impose *criminal* penalties for refusing to comply with a blood draw. **Id.** at 2185-86.

¶18    The circumstances of Neevel's blood draw do not raise constitutional issues under **Birchfield**. First, Neevel's blood draw was not justified as a search incident to a lawful arrest but, rather, as consent to search under the implied consent statute. Therefore, **Birchfield**'s holding that blood draws may not be administered as a search incident to a lawful arrest does not apply to Neevel's situation. Also, unlike the implied consent laws at issue in

---

[5] Even if the blood draw was not authorized by the implied consent statute, this court has recognized that a blood draw is not unreasonable simply because a less-intrusive test is available. **State v. Thorstad**, 2000 WI App 199, ¶9, 238 Wis. 2d 666, 618 N.W.2d 240 (concluding that the availability of a less intrusive test did not transform a warrantless blood draw of a suspected intoxicated driver into an unreasonable search); *see also* **State v. Krajewski**, 2002 WI 97, ¶60, 255 Wis. 2d 98, 648 N.W.2d 385 ("[T]he Supreme Court has repeatedly refused to declare that only the 'least intrusive' search practicable can be reasonable under the Fourth Amendment.") (quoting **Vernonia School Dist. 47J v. Acton**, 515 U.S. 646, 663 (1995) (internal quotations omitted)).

*Birchfield*, Wisconsin's implied consent statute does not impose criminal penalties for refusing to comply with a blood draw. As a result, *Birchfield* does not, as Neevel argues, "cast doubt" on the constitutionality of this law. *Id.* at 2185.

¶19    I address Neevel's consent to the blood draw in the next section.

### III.  Neevel Consented to the Blood Draw.

¶20    The State points out that Neevel voluntarily consented to the blood draw after Officer Olbinski requested a blood draw. Consequently, the State contends that Neevel does not have "standing" to raise issues related to a nonconsensual blood draw. Neevel responds that he does not have to object to a blood draw in order to have a basis to challenge it. In light of Neevel's express consent to the blood draw, I question whether Neevel has a basis to challenge the administration of the blood draw. However, because I have already concluded that the blood draw was constitutional, I need not resolve this issue. *See Barrows v. American Family Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

### IV.  Officer Olbinski Relied on the Implied Consent Statute in Good Faith.

¶21    Lastly, the State argues that, even if this court finds merit to Neevel's constitutional arguments, the blood test results should not be suppressed because Officer Olbinski relied on the implied consent statute in good faith. In response, Neevel argues that this court should reject application of the good faith exception for the same reasons that our supreme court rejected an application of the exception in *State v. Blackman*, 2017 WI 77, 377 Wis. 2d 339, 898 N.W.2d 774. As explained above, I find no merit to Neevel's constitutional arguments, so

9

the blood test results need not be suppressed. However, even if I had concluded that the blood draw was unconstitutional, I would also conclude that the blood test results were properly admitted into evidence under the good faith exception to the exclusionary rule.

¶22 Ordinarily, evidence obtained through an unlawful search is excluded at trial. *Blackman*, 377 Wis. 2d 339, ¶68. However, under the good faith exception, such evidence is not excluded when the officers conducting the illegal search "acted in the objectively reasonable belief that their conduct did not violate the Fourth Amendment." *State v. Dearborn*, 2010 WI 84, ¶33, 327 Wis. 2d 252, 786 N.W.2d 97 (quoting *United States v. Leon*, 468 U.S. 897, 918 (1984)). The reason for this exception is that evidence should only be suppressed when the benefits of deterring future Fourth Amendment violations outweigh the costs of suppression. *Prado*, 2021 WI 64, ¶57 (citing *Herring v. United States*, 555 U.S. 135, 144 (2009)). For instance, the supreme court has applied the good faith exception to evidence obtained by an officer who reasonably and objectively relied on a statute that authorized unconstitutional searches. *Illinois v. Krull*, 480 U.S. 340, 364 (1987). The Court reasoned that applying the exclusionary rule when an officer objectively and reasonably relied on a statute would not deter future unlawful police conduct. *Id.* at 349-50. In other words, excluding evidence obtained pursuant to a statute that has subsequently been declared unconstitutional "will not deter future Fourth Amendment violations by an officer who has simply fulfilled his responsibility to enforce the statute as written." *Id.* at 350.

¶23 Even if I were to hold that Neevel's blood draw was unconstitutional (and I do not), I would also conclude that the officer acted in objective good-faith reliance on the implied consent statute. The officer's interactions with Neevel were consistent with the requirements of the implied consent statute, and

suppressing the results of this blood draw would not deter future unlawful conduct. *See id.* Further, as noted, Neevel cites to no authorities that question the constitutionality of the statute. Instead, Neevel points only to **Blackman** and argues that this court should suppress the blood test results for the same reasons that the **Blackman** court suppressed evidence. As explained next, I reject Neevel's argument regarding **Blackman**.

¶24 In **Blackman**, a driver submitted to a blood draw after a law enforcement officer read the "Informing the Accused" form verbatim from WIS. STAT. § 343.305(4). **Blackman**, 377 Wis. 2d 339, ¶17. Our supreme court first held that the driver's consent to the blood draw was not voluntary because the Informing the Accused form misstated the law in that circumstance. *Id.*, ¶63. The court then held that the results of the blood test should be suppressed and that the good faith exception to the exclusionary rule did not apply. *Id.*, ¶75. The court reasoned that the misstatement in the implied consent statute created the potential for a "recurring or systemic" error and that suppressing the evidence would deter officers from relying on the misstated law in the future. *Id.*, ¶73.

¶25 Neevel's situation is not comparable to the circumstances of **Blackman**. Unlike the error in the Informing the Accused form in **Blackman**, Neevel admits that the implied consent statute is constitutional, including its authorization of officers to administer a blood draw rather than a breath test. *See* WIS. STAT. § 343.305(2). Also, whereas the **Blackman** court suppressed evidence to deter officers from relying on an aspect of the implied consent statute, suppressing Neevel's blood draw results would not deter any "recurring or systemic" error. Rather, so long as the implied consent statute is not "clearly unconstitutional," *see* **Krull**, 480 U.S. 340, at 349, officers can rely in good faith on the authority granted by the statute.

11

¶26 Because Neevel's sentence was stayed pending appeal, and it is unclear from available electronic records whether the stay is still in effect, I remand this matter to the circuit court for further proceedings consistent with this opinion.

## CONCLUSION

¶27 For the foregoing reasons, the judgment of the circuit court is affirmed and this matter is remanded for further proceedings consistent with this opinion.

*By the Court.*—Judgment affirmed and cause remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.