**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Robert James SNYDER, Defendant–Appellant.**

**No. 87–1321.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 16, 1988.

Decided July 22, 1988.

---

Daniel H. Bookin, Farella, Braun & Martel, San Francisco, Cal., for defendant-appellant.

Eric R. Havian, Asst. U.S. Atty., Criminal Div., San Francisco, Cal., for plaintiff-appellee.

Before ALARCON, HALL and KOZINSKI, Circuit Judges.

KOZINSKI, Circuit Judge:

We consider first whether the district court's denial of appellant's motion to suppress the results of a warrantless, nonconsensual blood-alcohol test violated appellant's fourth amendment rights, and second whether the district court had the authority to suspend appellant's state driver's license.

## Facts

On May 24, 1987, federal agents arrested appellant Robert Snyder at the Presidio in San Francisco, California, after the automobile he was driving struck and injured a military police officer. Detecting a strong odor of alcohol on Snyder's breath, the arresting officers took him to the Central Emergency Hospital, where a blood sample was drawn without his consent. Two days later, a blood test performed on the sample revealed a blood-alcohol content of 0.17%, well in excess of the legal limit under California law.

Snyder was charged in federal district court with driving while under the influence of alcohol resulting in bodily injury to another, in violation of Cal.Veh. Code § 23153(a) (West 1985) as incorporated into federal law by the Assimilative Crimes Act, 18 U.S.C. § 13 (1982). After his motion to suppress the results of the blood-alcohol test was denied, Snyder entered a conditional plea of guilty. He was sentenced to

a term of incarceration, a period of probation and a fine, and the court suspended his driver's license for one year. He now appeals.

## Discussion

### I.

■ Snyder first contends that the district court erred in denying his motion to suppress the results of the blood-alcohol test. He does not argue that the extraction of blood incident to his arrest was improper, recognizing that the Supreme Court's opinion in *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), forecloses such a claim. Instead, he challenges the subsequent warrantless analysis of the sample as an unreasonable search. Because the analysis was not conducted until two days after the initial extraction, any exigency had dissipated, he argues, and the government was required to obtain a warrant.

In *Schmerber*, the Supreme Court recognized that the administration of a blood test incident to a lawful arrest constituted a search, but held that the search could be conducted without a warrant because of the need to act before the level of alcohol in the blood was significantly diminished by metabolic processes. 384 U.S. at 770–71, 86 S.Ct. at 1835–36. The Court concluded that "the attempt to secure evidence of blood-alcohol content ... was an appropriate incident to petitioner's arrest," *id.* at 771, 86 S.Ct. at 1836, and was not unreasonably intrusive, given the limited scope of the test and the ease and safety with which it could be performed. *Id.* at 771–72, 86 S.Ct. at 1836–37.

Snyder points out, however, that the exigency justifying extraction of blood is eliminated once the blood is removed from the suspect's body, because any traces of alcohol in the extracted blood will be preserved indefinitely. Therefore, he argues, the justification for the warrantless analysis of the sample is also eliminated, particularly when the test is not conducted until well after the arrest. He relies on cases holding that the exception to the warrant requirement for searches incident to arrest is inapplicable "either if the 'search is remote in time or place from the arrest,' or no exigency exists." *United States v. Chadwick*, 433 U.S. 1, 15, 97 S.Ct. 2476, 2485, 53 L.Ed.2d 538 (1977) (citation omitted); *see also United States v. Andersson*, 813 F.2d 1450, 1456 (9th Cir.1987); *United States v. Monclavo–Cruz*, 662 F.2d 1285, 1287 (9th Cir.1981).[1]

This argument proves too much. Removal of blood from a defendant's blood stream eliminates immediately the danger that evidence of blood-alcohol content will be lost. Thus, if Snyder's argument were correct, the results of the blood test in *Schmerber* would have been excluded because no exigent circumstances remained by the time the test was actually conducted.

The flaw in Snyder's argument is his attempt to divide his arrest, and the subsequent extraction and testing of his blood, into too many separate incidents, each to be given independent significance for fourth amendment purposes. He would have us hold that his person was seized when he was arrested, his blood was seized again upon extraction at the hospital, and finally his blood was searched two days later when the blood test was conducted. It

1. Snyder also relies on *United States v. Mulder*, 808 F.2d 1346 (9th Cir.1987), in which we found that the fourth amendment was violated when police conducted warrantless chemical tests to determine the composition of pills legally seized from defendant's luggage. We concluded that the tests were not permissible without a warrant because they were not conducted until several days after the seizure and because they were intended to reveal the exact chemical composition of the pills, rather than simply revealing whether the pills contained one specific illegal or controlled substance. *See id.* at 1348.

The evidence tested in *Mulder* was seized pursuant to a "private search," and its reasoning and holding are therefore limited to that context: under the private search exception the degree of permissible governmental intrusion is strictly limited to "the scope of the private search." *Id.* Moreover, application of *Mulder* in the context of blood-alcohol tests would conflict with *Schmerber*, and we are of course bound to follow the Supreme Court's specific guidance in this area.

seems clear, however, that *Schmerber* viewed the seizure and separate search of the blood as a single event for fourth amendment purposes. As the Court stated in defining the nature of its inquiry, "the questions we must decide in this case are whether the police were justified in requiring petitioner to submit to the blood test, and whether the means and procedures employed in taking his blood respected relevant Fourth Amendment standards of reasonableness." 384 U.S. at 768, 86 S.Ct. at 1834.

The only justification for the seizure of defendant's blood was the need to obtain evidence of alcohol content. The Court therefore necessarily viewed the right to seize the blood as encompassing the right to conduct a blood-alcohol test at some later time. Accordingly, we are bound to conclude that under *Schmerber*, so long as blood is extracted incident to a valid arrest based on probable cause to believe that the suspect was driving under the influence of alcohol, the subsequent performance of a blood-alcohol test has no independent significance for fourth amendment purposes, regardless of how promptly the test is conducted.[2] The district court's denial of the motion to suppress the results of the test was therefore appropriate.

## II.

■ At sentencing, the district court suspended Snyder's California driver's license for one year. The court relied on Cal.Veh. Code § 23180 (West 1985), which provides that, upon a first conviction under Cal.Veh. Code § 23153, the defendant's "privilege to operate a motor vehicle shall be suspended by the Department of Motor Vehicles." Under the Assimilative Crimes Act, persons who commit crimes incorporated into federal law by virtue of the Act's provisions are "subject to a like punishment" to that imposed by the state for the same crime. 18 U.S.C. § 13. Because section 23180 makes mandatory the suspension of

licenses held by persons convicted in state court of violating section 23153, the government contends that Snyder should receive "a like punishment." Snyder responds that license suspension is not punishment within the meaning of the Assimilative Crimes Act, and that, in any event, the federal courts lack the power to suspend a driver's license issued by a state.

We addressed this issue in *United States v. Best*, 573 F.2d 1095 (9th Cir.1978). In *Best*, the defendant was convicted in federal court of drunk driving under Cal.Veh. Code § 23102(a). The sentencing judge, relying on Cal.Veh. Code § 13201.5(a), ordered a six-month suspension of Best's California driver's license, and Best appealed.

We first noted that the Assimilative Crimes Act incorporates only state penal laws, not regulatory provisions, and that suspension of drivers' licenses by the California Department of Motor Vehicles (DMV) is "regulatory and not punitive." *Best*, 573 F.2d at 1098–99. Under the statutes applicable to Best's crime, however, state courts were empowered, in their discretion, to order the DMV to suspend the licenses of convicted defendants. Despite this "hybrid procedure," which combined elements of judicial sentencing and regulatory enforcement, we held that the suspension was not punishment within the meaning of the Assimilative Crimes Act, and thus was not incorporated into federal law. *Id.* at 1100.

Moreover, while noting that a federal court had the power to limit a defendant's driving privileges within federal enclaves and to notify the DMV of a conviction, we held that the federal courts could not directly suspend a state license, because this would violate fundamental principles of federalism:

> [W]here not required for protection of the federal interest, [a federal court] may neither suspend a state driver's license nor order the state to do so, any more than it could dissolve a state-char-

---

**2.** This assumes, of course, that "the test chosen to measure [the defendant's] blood-alcohol level was a reasonable one" and "was performed in a reasonable manner" under *Schmerber.* 384 U.S.

at 771, 86 S.Ct. at 1836. Snyder does not contend that the test used in his case was unreasonable or flawed in any way.

tered corporation in federal *quo warranto* proceedings or sentence criminals convicted in federal court to terms in the state prison.

*Id.* at 1102.[3]

The government attempts to distinguish *Best,* pointing out that the statute at issue there vested discretion in the courts and the DMV to decide whether to order suspension, while the statute under which Snyder was sentenced requires suspension in all cases. But the discretionary nature of the suspension was not dispositive in *Best;* to the contrary, we stated that, even when the DMV is *required* to suspend licenses upon conviction, the suspension is regulatory and not penal where the statute vests enforcement in the agency rather than the courts. *Id.* at 1099. Because Cal.Veh. Code § 23180 vests responsibility for ordering suspensions in the DMV, such suspensions are not incorporated into federal law.

■ Even if the Assimilative Crimes Act could be read to incorporate license suspensions as an additional form of punishment, the federal courts would be powerless to issue suspension orders. *See Best,* 573 F.2d at 1102 & n. 12. Drivers' licenses are issued pursuant to the states' police powers, and the federal government has no constitutional authority to interfere with a state's exercise of its police power except to the extent the state's action intrudes on any of the spheres in which the federal government itself enjoys the power to regulate. Since no legitimate federal interest is implicated by a state-granted license to drive in areas not subject to the federal government's police power, federal courts are constitutionally barred from unilaterally ordering suspensions of state drivers' licenses. We therefore vacate Snyder's sentence in its entirety and remand for

resentencing in accordance with this opinion.[4]

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

---

3. While *Best* relied in part on *National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), which has since been overruled by *Garcia v. San Antonio Metro. Transit Auth.,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), this does not affect the validity of our reasoning or holding in *Best. Garcia* held only that the principle of federalism evidenced by the Tenth Amendment establishes no limitation on Congress' power to regulate within its assigned spheres; it provides no support for the proposition that the federal government may override or interfere with state regulatory schemes in areas not constitutionally susceptible to federal regulation. *See id.* at 546–50, 105 S.Ct. at 1015–17.

4. The district court may, of course, notify the DMV of Snyder's conviction pursuant to Cal. Veh. Code § 13363 (West 1987). *See Best,* 573 F.2d at 1102.