STATE of Wisconsin, Plaintiff-Respondent,

v.

James S. RIEDEL, Defendant-Appellant.†

Court of Appeals

*No. 02–1772–CR. Submitted on briefs November 12, 2002.—
Decided December 26, 2002.*

2003 WI App 18

(Also reported in 656 N.W.2d 789.)

† Petition to review denied 3-13-03.

922

On behalf of the defendant-appellant, the cause was submitted on the brief of *Ralph A. Kalal*, of *Kalal & Associates*, of Monona.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Phillip A. Koss*, district attorney, and *Diane M. Resch*, assistant district attorney, for Walworth county.

Before Nettesheim, P.J., Anderson and Snyder, JJ.

¶ 1. NETTESHEIM, P.J. James S. Riedel appeals from a judgment of conviction for operating a motor vehicle while intoxicated (OWI) contrary to Wis. Stat. § 346.63(1)(a) (1999–2000).[1] Riedel argues that the trial court erred in denying his motion to suppress evidence resulting from the analysis of his blood sample drawn without his consent following his arrest. Specifically, Riedel argues that the police were required to obtain a search warrant before submitting his blood sample for testing. We reject Riedel's argument and affirm the judgment.

---

[1] All references to the Wisconsin statutes are to the 1999–2000 version.

## FACTS

¶ 2. Riedel was arrested and cited for OWI on December 18, 2000. Later, following an analysis of his blood sample, Riedel was also charged with operating with a prohibited alcohol concentration (PAC). On February 1, 2001, Riedel filed motions to suppress the results of the blood analysis, arguing that the analysis constituted a "second search" which was performed absent exigent circumstances and without a warrant.[2] The trial court denied Riedel's motions following a hearing on May 16, 2001.

¶ 3. Riedel then entered a no contest plea to OWI contrary to Wis. Stat. § 346.63(1)(a) and a judgment of conviction was entered on March 21, 2002. Riedel appeals.[3]

## DISCUSSION

¶ 4. Riedel argues that the trial court erred· in denying his motion to suppress evidence of the analysis of his blood sample. Riedel contends that the analysis

---

[2] Riedel additionally filed motions to suppress the results of the blood analysis based on coerced consent and the warrantless blood draw. The trial court denied both motions. Riedel does not raise the issue of the warrantless blood draw on appeal except to preserve his challenge in the event that governing case law, *State v. Krajewski*, 2002 WI 97, 255 Wis. 2d 98, 648 N.W.2d 385, is overruled by the United States Supreme Court.

While Riedel raises his coerced consent argument on appeal, we need not address it because Riedel did not give consent to the blood draw. We nevertheless note that this argument was recently rejected by this court in *State v. Wintlend*, 2002 WI App. 314, No. 02–0965–CR.

[3] The PAC charge was later dismissed.

was a "second search" and therefore the police were required to obtain a search warrant prior to submitting the sample for testing.

■■

¶ 5. In reviewing the denial of a motion to suppress, we will uphold the trial court's findings of fact unless they are clearly erroneous. *State v. Waldner,* 206 Wis. 2d 51, 54, 556 N.W.2d 681 (1996); *see also* WIS. STAT. § 805.17(2). Whether a search is valid, however, is a question of constitutional law which we review de novo. *State v. Guzman,* 166 Wis. 2d 577, 586, 480 N.W.2d 446 (1992).

■

¶ 6. We begin by observing that a warrantless nonconsensual blood draw from a person arrested on probable cause for a drunk driving offense is constitutional based on the exigent circumstances exception to the warrant requirement of the Fourth Amendment even if the person offers to submit to a chemical test other than the blood test chosen by law enforcement provided that the blood draw complies with the factors enumerated in *State v. Bohling,* 173 Wis. 2d 529, 494 N.W.2d 399 (1993).[4] *State v. Krajewski,* 2002 WI 97, ¶ 3, 255 Wis. 2d 98, 648 N.W.2d 385.

---

[4] The court in *State v. Bohling,* 173 Wis. 2d 529, 533–34, 494 N.W.2d 399 (1993), held that a warrantless blood sample taken at the direction of a law enforcement officer is permissible under the following circumstances:

> (1) the blood draw is taken to obtain evidence of intoxication from a person lawfully arrested for a drunk-driving related violation or crime, (2) there is a clear indication that the blood draw will produce evidence of intoxication, (3) the method used to take the blood sample is a reasonable one and performed in a reasonable manner, and (4) the arrestee presents no reasonable objection to the blood draw. (Footnote omitted.)

¶ 7. Riedel does not challenge the warrantless blood draw on appeal. Rather, Riedel argues that the submission of the blood sample for testing constituted a "second search." Because exigent circumstances did not exist at the time of the testing, Riedel argues that the officers were required to obtain a warrant.

■

¶ 8. At the outset, we reject the State's threshold argument that Riedel is precluded from challenging the trial court's suppression ruling based on Riedel's conviction on the OWI charge and the dismissal of the PAC charge. The State reasons that Riedel's appeal lacks a justiciable controversy because he has failed to argue that he would not have pled to the OWI charge if the trial court had granted the suppression motion or that the OWI evidence would have been insufficient absent the blood test results. We reject the State's argument. In pleading to the OWI charge, Riedel undoubtedly considered all incriminating evidence against him, including the blood test results. ·

■

¶ 9. Addressing the merits of Riedel's argument, the State argues that our decision in *State v. VanLaarhoven*, 2001 WI App 275, 248 Wis. 2d 881, 637 N.W.2d 411, controls. The issue in *VanLaarhoven* was the same as presented here—whether a "blood sample, once obtained, [can] be analyzed for evidentiary purposes without obtaining a second search warrant."[5] *Id.* at ¶ 4. However, the facts in *VanLaarhoven* differ.

---

[5] The court in *State v. Thorstad*, 2000 WI App 199, ¶ 5, 238 Wis. 2d 666, 618 N.W.2d 240, citing *Schmerber v. California*, 384 U.S. 757, 769–70 (1966), recognized the existence of "exigent circumstances" in drunk driving situations "because the human body rapidly eliminates alcohol from the system, 'the delay

¶ 10. In *VanLaarhoven*, the defendant was advised under the Implied Consent Law and then consented to submit to a chemical test of his blood. *Id.* at ¶ 2. In holding that a search warrant was not a prerequisite to submitting the sample for analysis, the court of appeals relied on the language of the Implied Consent Law which provides in relevant part that

> [a]ny person who . . . drives or operates a motor vehicle upon the public highways of this state . . . is deemed to have *given consent* to one or more tests of his or her breath, blood or urine, *for the purpose of determining the presence or quantity in his or her blood or breath, of alcohol.*

*Id.* at ¶ 7 (citing WIS. STAT. § 343.305(2)). However, recognizing that a person may revoke his or her implied consent by refusing to take a test, *see County of Ozaukee v. Quelle*, 198 Wis. 2d 269, 277, 542 N.W.2d 196 (Ct. App. 1995), the court additionally relied on the fact that the defendant voluntarily submitted to the testing procedure, *VanLaarhoven*, 2001 WI App 275 at ¶ 8.

¶ 11. Here, Riedel did not voluntarily submit to the testing procedure. He expressly refused to do so, thereby revoking his implied consent. Therefore, we agree with Riedel that the implied consent analysis employed in *VanLaarhoven* does not directly control the issue in this case. However, the *VanLaarhoven* court found additional support for its ruling in *United States v. Snyder*, 852 F.2d 471 (9th Cir. 1988), and *State v. Petrone*, 161 Wis. 2d 530, 468 N.W.2d 676 (1991), both of which involved a defendant who, like Riedel, did not consent to an initial search. We deem these cases to be informative and persuasive.

---

necessary to obtain a warrant, under the circumstances, threatened the destruction of evidence.' "

¶ 12. In *Snyder*, the defendant was arrested for operating while intoxicated and a blood sample was taken without the defendant's consent. *Snyder*, 852 F.2d at 472. Two days later, the sample was submitted for analysis without a warrant. *Id.* The defendant brought a motion to suppress, claiming that the warrantless analysis of the blood sample was an unreasonable search. *Id.* at 472–73. The trial court denied the motion. *Id.*

¶ 13. Relying largely on *Schmerber v. California*, 384 U.S. 757 (1966), the *Snyder* court upheld the trial court's ruling. The court said:

> The flaw in Snyder's argument is his attempt to divide his arrest, and the subsequent extraction and testing of his blood, into too many separate incidents, each to be given independent significance for fourth amendment purposes . . . . It seems clear, however, that *Schmerber* viewed the seizure and separate search of the blood as a single event for fourth amendment purposes . . . .
>
> The [*Schmerber*] Court therefore necessarily viewed the right to seize the blood as encompassing the right to conduct a blood-alcohol test at some later time.

*Snyder*, 852 F.2d at 473–74.

¶ 14. As observed in *VanLaarhoven*, the Wisconsin Supreme Court arrived at a similar conclusion in *Petrone*. There, the police obtained a search warrant authorizing them to seize "all camera, film, or photographic equipment used in the taking, processing and development of photographic pictures, involving nude and partially nude female juveniles." *Petrone*, 161 Wis. 2d at 538. In executing the warrant, the police seized several rolls of undeveloped film. *Id.* In order to determine what kind of photographs the film contained, the

police developed the film the day following the search. *Id*. Akin to Riedel's case, the defendant sought to suppress the resulting pornographic photos, arguing that the later development of the film constituted a second, separate search for which a warrant should have been obtained. *Id*. at 544.

¶ 15. The supreme court rejected the defendant's argument.

> Developing the film is simply a method of examining a lawfully seized object. Law enforcement officers may employ various methods to examine objects lawfully seized in the execution of a warrant. For example, blood stains or substances gathered in a lawful search may be subjected to laboratory analysis . . . . Developing the film made the information on the film accessible, just as laboratory tests expose what is already present in a substance but not visible with the naked eye. Developing the film did not constitute . . . a separate, subsequent unauthorized search having an intrusive impact on the defendant's rights wholly independent of the execution of the search warrant. The deputies simply used technological aids to assist them in determining whether items within the scope of the warrant were in fact evidence of the crime alleged.

*Id*. at 545 (citation omitted).

██

¶ 16. This court has concluded that *Snyder* and *Petrone* stand for the proposition that the "examination of evidence seized pursuant to the warrant requirement or an exception to the warrant requirement is an essential part of the seizure and does not require a judicially authorized warrant. Both decisions refuse to permit a defendant to parse the lawful seizure of a blood sample into multiple components." *VanLaarhoven*, 2001 WI App 275 at ¶ 16. We find the reasoning

of *Snyder, Petrone* and *VanLaarhoven* persuasive, and we adopt their holdings here. We therefore conclude that the police were not required to obtain a warrant prior to submitting Riedel's blood for analysis.[6]

## *CONCLUSION*

¶ 17. The initial warrantless nonconsensual draw of Riedel's blood was constitutional based on the exigent circumstances exception to the warrant requirement of the Fourth Amendment. *Krajewski*, 2002 WI 97 at ¶ 3. We conclude that the subsequent analysis of Riedel's blood was simply the examination of evidence obtained

---

[6] We also reject Riedel's assertion that *State v. Betterley*, 191 Wis. 2d 406, 529 N.W.2d 216 (1995), and *Skinner v. Railway Labor Executive's Ass'n*, 489 U.S. 602 (1989), lend support to his argument.

The court in *Betterley* cited with approval the following reasoning, "Requiring police to procure a warrant for subsequent searches of an item already lawfully searched would in no way provide additional protection for an individual's legitimate privacy interests. The contents of an item previously searched are simply no longer private." *Betterley*, 191 Wis. 2d at 417 (citation omitted). Here, Riedel's blood had already been drawn during a valid search. Determining the content of the blood, i.e., whether it contained alcohol, was the sole purpose of that search.

In *Skinner*, the United States Supreme Court recognized that under *Schmerber*, the State may direct a blood sample to be withdrawn from a motorist suspected of driving while intoxicated, despite his or her refusal to consent to the intrusion. *Skinner*, 489 U.S. at 625. While *Skinner* stated that "[t]he ensuing chemical analysis of the sample to obtain physiological data is a further invasion of . . . privacy interests," *id.* at 616, it did not address whether the testing of such a sample constituted a "second search" requiring a warrant.

pursuant to a valid search. We therefore uphold the trial court's denial of Riedel's motion to suppress. We affirm the judgment.

*By the Court.*—Judgment affirmed.