COURT OF APPEALS
DECISION
DATED AND FILED

December 17, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2019AP924-CR**

Cir. Ct. No. 2015CF262

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT IV**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

CHARLES AUGUSTUS CLAYTON-JONES,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Sauk County:  GUY D. REYNOLDS and WENDY J.N. KLICKO, Judges.  *Affirmed.*

Before Fitzpatrick, P.J., Graham, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Charles Clayton-Jones appeals a judgment of conviction and an order denying his motion for postconviction relief without a hearing.[1]   Because we conclude that Clayton-Jones's claims of ineffective assistance of counsel are, at most, premised on unsettled questions of law, we affirm the circuit court's denial of his postconviction motion without a hearing.

## BACKGROUND

¶2     The facts in this case are not in dispute for purposes of this appeal. In September 2006, the Sauk County Sheriff's Department executed a search warrant at Clayton-Jones's house and seized a digital camera and other items.  The warrant affidavit alleged that in the summer of 2006 Clayton-Jones had sexual contact with a ten-year-old boy.  According to the affidavit, the boy reported that Clayton-Jones had rubbed the boy's penis with his hand "at least fifty times" and had inserted a tan vibrator in the boy's "butt."  The boy further reported that Clayton-Jones had "videotaped this activity" and had shown him a video of "three boys doing nasty stuff to each other."  The warrant authorized police to search Clayton-Jones's home for a "tan vibrator, pornographic movies and videotapes, which items may constitute evidence of a crime, to wit:  Exposing a Child to Harmful Material … and First Degree Child Sexual Assault."

¶3     As a result of those allegations, Clayton-Jones pled no contest to one count of first-degree sexual assault of a child and was sentenced to 10 years of initial confinement followed by 15 years of extended supervision.

---

[1] The Honorable Guy D. Reynolds presided over trial and entered the judgment of conviction.  The Honorable Wendy J.N. Klicko entered the order denying Clayton-Jones's motion for postconviction relief.

¶4    In 2008, the State charged Clayton-Jones with sexual assault for engaging in fellatio with the same boy, also during the summer of 2006, in Sauk County Case No. 2008CF311 ("the 2008 sexual assault case"). The circuit court dismissed the 2008 sexual assault case on double jeopardy grounds.

¶5    In 2015, Clayton-Jones filed a motion for return of personal property requesting that law enforcement return "all of his personal property seized by the State with the exception of any contraband." A Sauk County Sheriff's Department detective and evidence technician searched a memory card from the digital camera to see if it contained contraband. The memory card and several other electronic items that police had seized from Clayton-Jones's home in 2006 had not previously been fully searched.

¶6    The memory card contained a video that Clayton-Jones had recorded, showing a ten-year-old boy and a six-year-old boy naked and engaging in sexually explicit behavior.

¶7    Based on this video, the State charged Clayton-Jones with one count of child sexual exploitation. A jury convicted him in November 2017, and he was sentenced to five years of initial confinement followed by three years of extended supervision, consecutive to the sentences Clayton-Jones was then serving.

¶8    Clayton-Jones filed a motion for postconviction relief, alleging that his two trial attorneys were ineffective for not moving to suppress the contents of the digital camera's memory card on Fourth Amendment grounds. As pertinent here, he argued that the 2015 search of his digital camera was unconstitutional under *Riley v. California*, 573 U.S. 373 (2014), or, in the alternative, that the search was unconstitutional because it occurred after probable cause supporting the 2006 warrant had "dissipated." In *Riley*, the United States Supreme Court held

that law enforcement officers are generally required to obtain a warrant to search the contents of a cell phone that has been lawfully seized incident to arrest. *Id.* at 401.

¶9    The circuit court denied Clayton-Jones's postconviction motion without a hearing. The court distinguished *Riley* on the ground that the cell phone in that case was seized incident to arrest rather than pursuant to a warrant. The court further determined that the probable cause that supported the warrant in 2006 still existed at the time of the 2015 examination of the camera's memory card. The court reasoned that "both items remained in the custody of law enforcement since the time of their seizure"; that, at the time of the examination, both the camera and the memory card were still "capable of containing pornographic movies and videos"; and that "[t]he passage of time in no way [a]ffected that." This appeal follows.

## DISCUSSION

### *I. Standard of Review*

¶10    Clayton-Jones asks that we reverse the denial of his postconviction motion and grant him an evidentiary hearing. "A hearing on a postconviction motion is required only when the movant states sufficient material facts that, if true, would entitle the defendant to relief." *State v. Allen*, 2004 WI 106, ¶14, 274 Wis. 2d 568, 682 N.W.2d 433. "This is a question of law that we review de novo." *Id.*, ¶9.

¶11    A circuit court may deny a postconviction motion without a *Machner*[2] hearing if the motion fails to raise facts sufficient to entitle the movant to relief, the movant presents only conclusory allegations, or the record conclusively shows that the movant is not entitled to relief. *See State v. Sulla*, 2016 WI 46, ¶23, 369 Wis. 2d 225, 880 N.W.2d 659.

¶12    Clayton-Jones argues that his trial attorneys were ineffective for failing to move to suppress the contents of the digital camera's memory card. When reviewing a claim of ineffective assistance of counsel, this court upholds the circuit court's factual findings unless they are clearly erroneous, and we independently determine whether counsel was ineffective. *State v. Carter*, 2010 WI 40, ¶19, 324 Wis. 2d 640, 782 N.W.2d 695. Likewise, when reviewing a decision on a motion to suppress evidence, this court upholds the circuit court's factual findings unless they are clearly erroneous but we independently apply constitutional principles to the facts. *State v. Matalonis*, 2016 WI 7, ¶28, 366 Wis. 2d 443, 875 N.W.2d 567.

## II.    *Ineffective Assistance of Counsel*

¶13    Clayton-Jones argues that his trial attorneys were ineffective for failing to move to suppress the contents of the digital camera's memory card on the ground that the search of the memory card was unconstitutional under the Fourth Amendment to the United States Constitution and article I, section 11 of

---

[2] *See State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

the Wisconsin Constitution.[3] He contends that the 2006 warrant did not support a search of the camera and memory card at any time or, in the alternative, that the probable cause supporting the 2006 warrant had dissipated by 2015, when the memory card was examined.[4]

¶14 The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to effective counsel. ***Strickland v. Washington***, 466 U.S. 668, 686 (1984). "For a claim of ineffective assistance of counsel to be successful, a defendant must demonstrate both that (1) counsel's representation was deficient; and (2) the deficiency was prejudicial." ***State v. Dalton***, 2018 WI 85, ¶32, 383 Wis. 2d 147, 914 N.W.2d 120. "To demonstrate deficient performance, a defendant must show that counsel's representation fell below an objective standard of reasonableness considering all the circumstances." ***Id.***, ¶34. "In determining whether counsel's performance was deficient for failing to bring a motion, we may assess the merits of that motion." ***State v. Sanders***, 2018 WI 51, ¶29, 381 Wis. 2d 522, 912 N.W.2d 16.

¶15 "In order to constitute deficient performance, the law must be settled in the area in which trial counsel was allegedly ineffective." ***State v. Hanson***, 2019 WI 63, ¶28, 387 Wis. 2d 233, 928 N.W.2d 607. "When the law is unsettled, the failure to raise an issue is objectively reasonable and therefore not deficient performance." ***State v. Jackson***, 2011 WI App 63, ¶10, 333 Wis. 2d 665, 799

---

[3] Wisconsin courts generally follow the United States Supreme Court's interpretation of the Fourth Amendment when interpreting the analogous provision in the Wisconsin Constitution. *See* ***State v. Richardson***, 156 Wis. 2d 128, 137, 456 N.W.2d 830 (1990). Because Clayton-Jones does not raise any separate arguments based on the Wisconsin Constitution, for ease of reading we reference his constitutional arguments as "Fourth Amendment" arguments.

[4] The State does not argue that any exception to the warrant requirement applies here.

N.W.2d 461.  The law is unsettled "[w]hen case law can be reasonably analyzed in two different ways," *id.*, or when "Wisconsin law was not clear at the time of [the alleged deficient performance]," *State v. Morales-Pedrosa*, 2016 WI App 38, ¶26, 369 Wis. 2d 75, 879 N.W.2d 772.

¶16   When a defendant argues that counsel was ineffective for not raising a certain issue, a court generally is "confined to considering the narrower issue of whether the law was so well settled that counsel's performance was legally deficient."  *See State v. Breitzman*, 2017 WI 100, ¶56, 378 Wis. 2d 431, 904 N.W.2d 93.  Where the law is unsettled, a court "need not address the merits" of the issue that counsel failed to raise.  *See State v. Lemberger*, 2017 WI 39, ¶¶32-35, 374 Wis. 2d 617, 893 N.W.2d 232.

¶17   For the reasons set forth below, we conclude that Clayton-Jones's Fourth Amendment arguments in support of his ineffective assistance claim depend, at most, on unsettled law and that therefore the claim must fail.  Thus, he is not entitled to an evidentiary hearing.  *See Sulla*, 369 Wis. 2d 225, ¶29 ("'[A]n evidentiary hearing is not mandatory if the record as a whole conclusively demonstrates that defendant is not entitled to relief ....'" (quoting *State v. Howell*, 2007 WI 75, ¶77 n.51, 301 Wis. 2d 350, 734 N.W.2d 48)).

### III.  Scope of the 2006 Warrant and *Riley*

¶18   Clayton-Jones's first argument in support of his claim of ineffective assistance posits that counsel was ineffective for failing to move to suppress the contents of the memory card because the 2006 warrant did not authorize a search of the digital camera or its memory card at any time.  He contends that the 2006 warrant authorized the search of "premises," identified as a house, but did not authorize the search or forensic analysis of electronic files.  Clayton-Jones

acknowledges that the 2006 warrant allowed law enforcement to search his house for, among other things, "pornographic movies and videotapes." However, he argues that, pursuant to *Riley*, the warrant did not authorize the search of the memory card.[5]

¶19    In *Riley*, police arrested the defendant during a traffic stop and then searched his cell phone without a warrant. *Riley*, 573 U.S. at 378-79. The United States Supreme Court held that, in general, "the search incident to arrest exception does not apply to cell phones." *Id.* at 401. In reaching this conclusion, the Court discussed the "cache of sensitive personal information" available on a modern cell phone. *See id.* at 395-96. The Court explained that this "broad array of private information" supported treating cell phones differently than other types of physical evidence for purposes of searches incident to arrest. *See id.* at 395-97.

¶20    In rejecting Clayton-Jones's ineffective assistance of counsel claim, the circuit court distinguished *Riley*, concluding that *Riley*'s reasoning was limited to the context of warrantless searches incident to arrest. In contrast to the facts of *Riley*, Clayton-Jones's digital camera was seized pursuant to a search warrant that allowed officers to search for "pornographic movies and videotapes." Thus, the court concluded that the search warrant authorized the forensic examination of the memory card. In support of this conclusion, the court relied on three cases, the most relevant of which is *State v. Petrone*, 161 Wis. 2d 530, 468 N.W.2d 676

---

[5] Clayton-Jones argues that, "at least in the area of warrantless searches," our supreme court has recognized that the initial seizure of a digital object must be separated from the subsequent analysis of it. He relies on *State v. Sobczak*, 2013 WI 52, 347 Wis. 2d 724, 833 N.W.2d 59, and *State v. Carroll*, 2010 WI 8, 322 Wis. 2d 299, 778 N.W.2d 1. Clayton-Jones does not discuss these pre-*Riley* cases in any detail. We conclude that they are not instructive here because they do not involve warranted searches and address searches of a laptop computer and a cell phone, respectively.

(1991), *abrogated on other grounds by State v. Greve*, 2004 WI 69, ¶31 & n.7, 272 Wis. 2d 444, 681 N.W.2d 479.

¶21    In *Petrone*, police executed a search warrant at the defendant's home and seized undeveloped film. *Id.* at 538. Police developed the film the next day at the police station and discovered that it contained pictures of naked, underage girls. *Id.* at 538-39. The defendant argued that "developing the film later at the police station was a second, separate search for which a warrant should have been obtained." *Id.* at 544. Our supreme court rejected this argument, concluding that "[a] search warrant does not limit officers to naked-eye inspections of objects lawfully seized in the execution of a warrant." *Id.* at 544-45. The court reasoned: "Developing the film is simply a method of examining a lawfully seized object. Law enforcement officers may employ various methods to examine objects lawfully seized in the execution of a warrant." *Id.* at 545. The court noted, for example, that "blood stains or substances gathered in a lawful search may be subjected to laboratory analysis." *Id.* The court further explained that "[t]he deputies simply used technological aids to assist them in determining whether items within the scope of the warrant were in fact evidence of the crime alleged." *Id.*

¶22    The circuit court also relied on two cases involving the search and seizure of blood from intoxicated drivers, *United States v. Snyder*, 852 F.2d 471 (9th Cir. 1988), and *State v. Riedel*, 2003 WI App 18, 259 Wis. 2d 921, 656 N.W.2d 789. In *Snyder*, the court concluded that the United States Supreme Court, in *Schmerber v. California*, 384 U.S. 757 (1966), "viewed the seizure and separate search of the blood as a single event for fourth amendment purposes" and that the *Schmerber* Court "therefore necessarily viewed the right to seize the

blood as encompassing the right to conduct a blood-alcohol test at some later time." *Snyder*, 852 F.2d at 474.

¶23 In *Riedel*, the defendant challenged the testing of his lawfully seized blood, arguing that the testing was a second search that required a warrant. *Riedel*, 259 Wis. 2d 921, ¶¶2, 4, 7. Relying on *Petrone* and *Snyder*, we rejected the defendant's argument, stating: "*Snyder* and *Petrone* stand for the proposition that the 'examination of evidence seized pursuant to the warrant requirement or an exception to the warrant requirement is an essential part of the seizure and does not require a judicially authorized warrant.'" *Riedel*, 259 Wis. 2d 921, ¶16 (quoting *State v. VanLaarhoven*, 2001 WI App 275, ¶16, 248 Wis. 2d 881, 637 N.W.2d 411).

¶24 Based on its analysis of *Petrone*, *Snyder*, and *Riedel*, the circuit court concluded that Clayton-Jones's memory card was "lawfully seized and eventually analyzed or examined." The State argues that the circuit court's reliance on these cases was appropriate and that *Riley*'s holding is limited not only to searches incident to arrest, as determined by the circuit court, but also to searches of cell phones.

¶25 Clayton-Jones disagrees that *Riley* is inapplicable. He first contends that *Riley*'s reasoning should apply equally to cases involving warrants and that there is no logical basis to conclude that "the same sequence of events should be considered two searches in the absence of a warrant and one search in the presence of [a warrant]." Second, he argues that the rationale in *Riley* should not be limited to cell phones but should also include digital cameras. He argues that a digital camera, like a cell phone, has significant storage capacity; that the photographs on a digital camera could reveal significant details about the owner's private life; and

that a digital camera can reveal which camera took a picture, and when and where the photograph was taken. He also argues that the three cases upon which the circuit court relied are distinguishable because they are pre-*Riley* cases, do not involve digital media, and therefore do not implicate the same privacy concerns as the cell phone in *Riley* or the memory card here.

¶26 Notably, Clayton-Jones has not provided any case from this jurisdiction or any other jurisdiction in which a court has expanded the *Riley* Court's rationale to either warrant searches or digital cameras.

¶27 Conversely, the State has provided case law from other jurisdictions and unpublished opinions from this court indicating that *Riley*'s holding does not extend beyond searches of cell phones and searches incident to arrest. *See, e.g.*, *State v. Inman*, 409 P.3d 1138, 1146 (Wash. Ct. App. 2018) (stating that, in *Riley*, "the Court explicitly limited this holding to cell phones seized during *searches incident to arrest*"); *Commonwealth v. Hernandez*, No. BRCR2013-00983, 2014 WL 6092216, at *13 n.12 (Mass. Super. Ct. Aug. 26, 2014) (unpublished) (collecting cases and stating that "subsequent cases have emphasized that *Riley* is inapplicable where a cell phone is searched pursuant to a warrant"); *State v. Gallagher*, No. 2017AP1403-CR, unpublished slip op. ¶¶9-12 (WI App Apr. 5, 2018) (finding no conflict between *Riley* and *Riedel*, and stating that it is not "apparent how *Riley* might be applied outside the context of a search incident to arrest"); *State v. Schneller*, No. 2016AP2474-CR, unpublished slip op. ¶9 (WI App June 22, 2017) (concluding that *Riedel* does not conflict with *Riley* because "*Riley* addressed the narrow issue of whether a warrant is required to search a cell phone that is seized incident to an arrest").

¶28     Our research likewise reveals authority that supports the State's interpretation.  *See **United States v. Vergara***, 884 F.3d 1309, 1312 (11th Cir. 2018) ("In ***Riley***, the Supreme Court addressed the constitutionality of warrantless manual searches of cell phones following the arrest of two defendants in the United States.  And the Supreme Court expressly limited its holding to the search-incident-to-arrest exception." (citation omitted)); ***United States v. Crumble***, 878 F.3d 656, 660 (8th Cir. 2018) ("***Riley***'s holding is limited to cell phones seized incident to arrest."); ***United States v. Cano***, 973 F.3d 966, 969 n.7 (9th Cir. 2020) ("In ***Riley***, the Court held 'a warrant is generally required before … a search [for information on a cell phone], even when a cell phone is seized incident to arrest.'  The Court limited this holding only to the search incident to arrest exception." (citations omitted; bracketed material in original)).

¶29     Indeed, one federal case upon which the State relies, ***United States v. Miller***, 34 F. Supp. 3d 695 (E.D. Mich. 2014), is very similar to the instant case and also involved a search of a digital camera pursuant to a warrant.  In ***Miller***, police searched the defendant's residence pursuant to a warrant that authorized a search of the residence for suspected drugs and firearms, "'[a]ll items used in connection with the use, manufacturing, storage, transportation, sales and/or concealment'" of drugs, and "'[a]ll items establishing ownership, control, occupancy, or possession'" of the residence described.  ***Id.*** at 697.  During the execution of the warrant, police found defendant's digital camera and, while examining it, discovered images of young girls engaged in sexual acts.  ***Id.***  The defendant moved to suppress, arguing that the examination of the digital camera violated his Fourth Amendment rights under ***Riley***.  ***Miller***, 34 F. Supp. 3d at 698-99.

¶30    The *Miller* court rejected the defendant's arguments, concluding that *Riley* was distinguishable on the two grounds at issue here:  first, *Riley* "involved a warrantless search incident to arrest, while this case involves a warranted search of a home" and "[a] different mode of analysis pertains to each," and second, "the search of [a] camera does not raise the same privacy concerns as a cell phone." *Miller*, 34 F. Supp. 3d at 699.   In comparing the privacy interests in digital cameras versus cell phones, the court further explained:

> Dedicated cameras, unlike cell phones, are unlikely to be used on a continuing, daily basis, and therefore do not boast the extensive amount of personal information commonly present in cell phones.  Contemporary cell phones are commonly understood to be much more than telephones. Frequently they will record an individual's internet browsing history, a list of that individual's contacts, calls, and text messages, as well as detailed GPS data revealing the individual's movements.  In contrast, cameras contain a limited type of data, restricted to image and video files, that do not touch the breadth or depth of information that a cell phone's data offers.  Digital cameras also hold significantly less data than many cell phones ….
>
>        ... [B]ecause of its relatively limited capacities, a search of a dedicated digital camera does not pose the same kinds of privacy concerns as does the search of a contemporary "smart phone."  Defendant is unable to successfully analogize his case to *Riley* ....

*Id.* at 699-700.   Accordingly, the court held that "the search of Defendant's camera fell within the scope of a warranted drug investigation and police did not need specific, additional warrant authorization to search initially within the camera." *Id.* at 700.

¶31    Our review of the cases discussed above leads us to conclude that, at most, Clayton-Jones's arguments rest on an area of the law that is unsettled.  In the State's favor, *Petrone*—concluding that a warrant authorizing the seizure of a camera also authorizes developing the camera's film—could be reasonably viewed

as deciding the issue here. As stated, our supreme court explained in *Petrone* that "[a] search warrant does not limit officers to naked-eye inspections of objects lawfully seized in the execution of a warrant"; that "[d]eveloping the film is simply a method of examining a lawfully seized object"; and that "[l]aw enforcement officers may employ various methods to examine objects lawfully seized in the execution of a warrant." *Petrone*, 161 Wis. 2d at 544.

¶32 On the other hand, Clayton-Jones is correct that *Petrone* is factually dissimilar from the instant case because *Petrone* involved an "old-fashioned camera" rather than digital media as in *Riley*. He further argues that *Petrone* conflicts with *Riley* to the extent that *Petrone* assumes that the lawful possession of a device makes the analysis of the media in that device lawful too. In response, however, the State makes a compelling argument, supported by non-binding authority, that *Riley* does not apply because the search here was pursuant to a warrant and did not involve a cell phone. And, as stated, Clayton-Jones has provided no authority from Wisconsin or anywhere else in which a court has applied *Riley* to either a warranted search or a search of a digital camera, which strongly cuts against his claim. *See* **Morales-Pedrosa**, 369 Wis. 2d 75, ¶26 (law is unsettled when "Wisconsin law was not clear at the time of" the alleged deficient performance); **Jackson**, 333 Wis. 2d 665, ¶10 (law is unsettled "[w]hen case law can be reasonably analyzed in two different ways").

¶33 Because Clayton-Jones's appeal raises an ineffective assistance of counsel claim rather than a direct Fourth Amendment claim, we need not resolve the merits of Clayton-Jones's Fourth Amendment argument predicated on *Riley*. Rather, we need only consider "the narrower issue of whether the law was so well settled that counsel's performance was legally deficient." **Breitzman**, 378 Wis. 2d 431, ¶56. Based on our review, we conclude that the law is, at most, unsettled as

to whether the forensic examination of the digital camera was permissible pursuant to **Petrone**, or impermissible under **Riley**. And as previously stated, "[w]hen the law is unsettled, the failure to raise an issue is objectively reasonable and therefore not deficient performance." **Jackson**, 333 Wis. 2d 665, ¶10.[6]

¶34     Thus, we reject Clayton-Jones's argument that he received ineffective assistance of counsel due to his counsel's failure to bring a suppression motion on this ground. *See* **Strickland**, 466 U.S at 697 (if defendant fails to prove one prong of the **Strickland** test for ineffective assistance of counsel, a court need not address the other prong).

## IV.  Dissipation Argument

¶35     Clayton-Jones's alternative argument in support of his ineffective assistance claim is that the probable cause supporting the 2006 warrant had dissipated by the time of the 2015 forensic examination of the memory card. This is so, he argues, because he could no longer be charged with the two crimes specifically mentioned in the warrant, exposing a child to harmful material and first-degree child sexual assault. Specifically, he contends that the "statute of

---

[6] In his reply brief, Clayton-Jones asks us to reject the Wisconsin Supreme Court's "unsettled law" approach taken in cases such as **State v. Hanson**, 2019 WI 63, ¶28, 387 Wis. 2d 233, 928 N.W.2d 607, and **State v. Breitzman**, 2017 WI 100, ¶49, 378 Wis. 2d 431, 904 N.W.2d 93, and to instead adopt an approach taken by courts in Iowa and Oregon in which defense counsel may be deemed deficient in certain circumstances, even where the law is unsettled. *See* **Millam v. State**, 745 N.W.2d 719 (Iowa 2008); **Bumgarner v. Nooth**, 295 P.3d 52 (Or. Ct. App. 2012). However, we are without authority to grant this request because we are bound by the decisions of our supreme court. *See, e.g.*, **Cook v. Cook**, 208 Wis. 2d 166, 189-90, 560 N.W.2d 246 (1997). Additionally, Clayton-Jones contends that the "unsettled law" rationale articulated by our supreme court in **Hanson**, **Breitzman**, and other cases conflicts with the United States Supreme Court's decision in **Strickland v. Washington**, 466 U.S. 668, 687 (1984), to the extent that they do not allow for the approaches taken in cases such as **Millam** and **Bumgarner**. Clayton-Jones does not persuade us that such a conflict exists.

limitations on the crime of exposing a child to harmful material ... expired in the summer of 2012, three years before the detective searched the camera and memory card," and that the circuit court's dismissal of the 2008 sexual assault case on double jeopardy grounds would have precluded a sexual assault charge based on the contents of the digital camera.

¶36    The State responds that Clayton-Jones's dissipation argument is meritless, or at least novel, and that therefore Clayton-Jones's trial attorneys did not perform deficiently by not raising a dissipation argument in a suppression motion. First, the State contends that a dissipation analysis does not apply to an examination of evidence that occurs after the execution of a search warrant. The State notes that the execution of the warrant in this case occurred in 2006, not in 2015, and contends that the probable cause supporting the warrant had not dissipated by the time of what it sees as the only constitutionally significant event for purposes of dissipation analysis:  the 2006 execution of the warrant. In support, the State relies on **Petrone**, which, according to the State, "views the execution of a search warrant as the event when police seize evidence, not the later examination of the evidence." *See* **Petrone**, 161 Wis. 2d at 545 (concluding that "[l]aw enforcement officers may employ various methods to examine objects lawfully seized in the execution of a warrant" and that "[d]eveloping the film is simply a method of examining a lawfully seized object").

¶37    Second, even assuming the search of the memory card constituted a second execution of the warrant as Clayton-Jones argues, the State contends that there is no merit in, or at least that the law is uncertain regarding, Clayton-Jones's argument that probable cause dissipates merely because a defendant has an affirmative defense to the criminal statutes mentioned in the search warrant. As stated, the affirmative defenses that Clayton-Jones argues are applicable here are

16

the six-year statute of limitations for exposing a child to harmful material and a double-jeopardy bar to a charge of child sexual assault because these were the specific offenses referred to in the warrant.[7]

¶38 We agree with the State that Clayton-Jones's dissipation argument rests on legal theories that are, at most, unsettled. We therefore conclude that Clayton-Jones's trial attorneys were not ineffective for failing to bring a suppression motion based on the dissipation theory that Clayton-Jones advances here.

¶39 We note that Clayton-Jones has not provided any authority that applies a dissipation analysis to circumstances such as those in the instant case, in which a search warrant is initially executed and police later conduct an examination of an item lawfully seized during the warrant's execution. Rather, in all of the cases on which Clayton-Jones relies, the courts considered whether the probable cause supporting the warrant's issuance had dissipated prior to the initial execution of the warrant, not whether it had dissipated prior to the later inspection of the seized items. *See State v. Edwards*, 98 Wis. 2d 367, 377, 297 N.W.2d 12 (1980) (defendant may seek suppression of evidence by arguing "that the probable cause upon which the warrant originally issued had dissipated *at the time the warrant was executed*" (emphasis added)); *State v. Guthrie*, 627 N.W.2d 401, 422-23 (S.D. 2001) (noting that a new finding of probable cause was needed to justify the initial seizure of a computer because six months had passed between issuance of the warrant and seizure of the computer).

---

[7] We observe that, although the warrant mentioned charges for first-degree child sexual assault and exposing a child to harmful material, Clayton-Jones was actually convicted of child sexual exploitation.

17

¶40 Clayton-Jones has not provided any authority, controlling or otherwise, to show that the forensic examination of the memory card constituted a second "execution" of the warrant, or that, contrary to the *Petrone* rationale discussed above, the forensic examination was a second search rather than part of the initial search conducted pursuant to the 2006 warrant. Thus, it is questionable whether the dissipation analysis even applies here.

¶41 However, even assuming that the dissipation rule applies to examination of evidence lawfully seized pursuant to a warrant, the State argues that an affirmative defense does not negate probable cause for a warrant, and provides authority from other jurisdictions in support of its position. *See, e.g.*, *Paez v. Mulvey*, 915 F.3d 1276, 1286 (11th Cir. 2019) ("So long as it is reasonable to conclude from the body of evidence as a whole that a crime was committed, the presence of some conflicting evidence or a possible defense will not vitiate a finding of probable cause."); *Fridley v. Horrighs*, 291 F.3d 867, 873 (6th Cir. 2002) (holding that "a police officer is not required to inquire into facts and circumstances in an effort to discover if the suspect has an affirmative defense" and noting that two of its prior decisions did not "hold that the probable cause determination requires an examination of a suspect's legal defenses"); *Pickens v. Hollowell*, 59 F.3d 1203, 1207-08 (11th Cir. 1995) (concluding that "police officers have no responsibility to determine the viability of a statute of limitations defense when executing a valid arrest warrant" and that "[t]he existence of a statute of limitations bar is a legal question that is appropriately evaluated by the district attorney or by a court after a prosecution is begun, not by police officers executing an arrest warrant"). At a minimum, the State argues, the law is unsettled because "no binding precedent" holds that an affirmative defense negates

probable cause to search and therefore trial counsel cannot be deemed deficient in failing to raise this dissipation argument.

¶42 In response, Clayton-Jones does not provide any authority negating that provided by the State. Instead, he argues that the cases the State relies on are distinguishable because this case involves more than an affirmative defense: here, law enforcement actually *knew* in 2015 that Clayton-Jones had been convicted and that all cases against him had been resolved, which, according to Clayton-Jones, "tells them the 2006 search warrant lacked viability." In support, Clayton-Jones quotes the detective's affidavit regarding her 2015 forensic analysis of the memory card, in which the detective stated: "*[A]fter Defendant's cases were closed* I was notified that Defendant was requesting return of all of his property." Clayton-Jones further argues that the cases relied on by the State are inapplicable because they are civil cases involving qualified immunity.

¶43 As previously stated, however, because this case involves a claim of ineffective assistance of counsel rather than a direct Fourth Amendment claim, we need decide only whether the law was sufficiently settled that Clayton-Jones's trial lawyers could be deemed deficient by not raising this Fourth Amendment argument. *See **Breitzman***, 378 Wis. 2d 431, ¶56. Clayton-Jones has not established that the law clearly prohibited police from examining the memory card in 2015 because he could not be prosecuted for the two crimes referenced in the warrant. At most, he has demonstrated that the law is unsettled on this point. As a result, he cannot succeed on a claim of ineffective assistance of counsel. *See **Hanson***, 387 Wis. 2d 233, ¶28.

¶44 In sum, Clayton-Jones has failed to show that his trial attorneys were ineffective for failing to move to suppress the evidence found on the digital

camera's memory card. Accordingly, the circuit court properly denied his postconviction motion without a hearing. *See **Sulla***, 369 Wis. 2d 225, ¶29 ("evidentiary hearing is not mandatory if the record as a whole conclusively demonstrates that defendant is not entitled to relief").

## CONCLUSION

¶45 For the reasons stated above, we affirm the circuit court's order denying Clayton-Jones's postconviction motion without a hearing.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2017-18).